CHESTER D. PRATT *vs.* HENRY W. PAINE & another, trustees.

Suffolk. Nov. 11, 12, 1875. — Jan. 10, 1876. ENDICOTT & LORD, JJ., absent.

A lease of a dwelling house for five years provided that the lessor might terminate the lease by notice, and that, if this was done during the first three years of the term, the lessee should be paid such sum as a compensation for the loss he may "by such abridgment of the term sustain in consequence of expenditures incurred by the lessee in fitting up the premises, and expenses incurred in removing." In an action by the lessee to recover for expenses incurred by him in fitting up the premises, the lease having been terminated by notice within the three years, it appeared that, at the time the lease was made, the building was in thorough repair ; but the lessee made some changes in it, and furnished it. *Held*, that the term "fitting up the premises" included not only the fitting up of the building and premises to the uses of the lessee, but the fitting of his furniture to the building, such as carpets, window curtains and the like. *Held, also,* that the measure of the lessee's damages was the loss sustained by reason of his having incurred such expenditures the full benefit of which he had lost by the abridgment of his lease, and not the entire cost of fitting up.

In an action to recover compensation for services in effecting a lease, the plaintiff contended that the defendant agreed to pay him regular brokers' commissions, and put in evidence of what a broker would be entitled to by the custom. The judge ruled, against the defendant's objection, that the custom was a reasonable one, and instructed the jury that they should find according to the custom, if they found that the defendant agreed as alleged ; but that, if they found that the services were rendered without an agreement as to compensation, they should find the value of the services. The jury returned a verdict for a less sum than that testified to as allowed by the custom. *Held*, on the defendant's bill of exceptions, that the question of the reasonableness of the custom need not be considered

CONTRACT against the trustees under the will of Isaiah Atkins. The first and third counts were upon a lease whereby the defendants leased to the plaintiff certain premises on Kingston Street, in Boston, for a term of five years from October 1, 1871, " to use and occupy the premises only as a dwelling house," and containing the following clause :

" Provided, however, that the said lessors, or those having their estate in the premises, may, at any time during the term, terminate this lease by giving to the lessee, or those holding under him, three months' notice in writing of their intention so to do ; and, if such notice shall be given any time during the term, the lessee, or those having his estate in the premises, shall have the right to continue in occupation of the premises during the three months next ensuing the day on which such notice shall be given, free of all obligation to pay rent ; and, if such notice shall be

given during the first three years of the term, the lessee, or those having his estate in the premises, besides his right to occupy as aforesaid shall be paid such sum as a compensation for the loss he or they may by such abridgment of the term sustain in consequence of expenditures incurred by the lessee in fitting up the premises, and expenses incurred in removing, as shall be determined by two appraisers to be appointed one by the lessors and one by the lessee, upon the premises being vacated in accordance with the notice."

The second count was as follows : " And the plaintiff says the defendants owe the plaintiff the sum of eight hundred dollars according to the account hereto annexed : H. W. Paine and Isaac F. Dobson, trustees, to Charles D. Pratt Dr. To commissions and services in negotiating lease of 17 Kingston St. Boston, to George K. Snow and George W. March, 20 years' lease at $4000 per annum, total rent $80,000, at 1 per cent. $800."

Trial in the Superior Court, before *Putnam*, J., who allowed a bill of exceptions in substance as follows :

The plaintiff hired the premises for the purpose of a boarding house, and the premises had been put in thorough repair by the defendants at the time the lease was given. The plaintiff entered upon the premises on the first day of the term, and continued to pay them rent, and proceeded at once to furnish the house throughout with carpets and furniture of various kinds, part of which was new. The time required to furnish the house ready for the reception of the boarders was about one month. The plaintiff also made some changes in the rooms, put up a partition and cut a door through, put in new furnace flues, a new floor, and painted the roof.

On November 18, 1872, the lessors gave the lessee a written notice to vacate the premises in accordance with the above provision in the lease, and the plaintiff vacated the premises in accordance with said notice. Two persons were appointed as appraisers, who were unable to agree upon the sum to be paid the plaintiff, and the plaintiff and defendants were unable to agree upon any other appraisers.

The plaintiff claimed as part of the expenditures included in the phrase " fitting up the premises " the expense in furnishing the house as well as the alterations made by him, and requested

the judge to rule that the construction of the phrase " fitting up the premises " depends upon the circumstances of the case and the purpose for which they were to be used , and, the purpose being that of a boarding house, the plaintiff is entitled to recover for loss caused by his expenditures in furnishing the house with such furniture, including carpets, rugs, curtains, as well as alterations to the rooms, so as to render the house suitable for the reception of boarders ; that the phrase " fitting up the premises," under all the circumstances of the case, means furnishing all kinds of furniture as well as alterations to the building.

The judge refused so to rule, but instructed the jury that the term " fitting up the premises " meant, all the expenses the lessee was at, during the term, in doing anything to the premises to adapt them to his use, and also the expenses of specially fitting any furniture to the premises, such as carpets, window curtains and the like ; that is, the labor and expense of fitting it, and the depreciation in value upon it. The plaintiff excepted to this ruling, and to the refusal to rule as requested.

The defendants requested the judge to rule that the words " fitting up the premises " included only the actual alterations and additions made to the house by the lessee as hereinbefore recited, and did not include carpets or curtains, or any other furniture whatever ; but the judge ruled as before stated ; to which ruling and refusal to rule as requested the defendants excepted.

In support of the second count, the plaintiff's evidence tended to show that the defendants employed him to procure for them a tenant, and agreed to pay him therefor the regular commission ; this was controverted. The only evidence of value of services was that of certain real estate brokers, who testified that by the custom in Boston, the broker who negotiated a lease of twenty years, or of over three years, was entitled to receive from the lessor one per centum on the whole rent, stipulated to be paid by the lessee ; that the commission on sale of real estate was one per cent. on price, and that the commission on lease of less than three years was five per cent. on one year's rental. The defendants asked the judge to rule that this custom was unreasonable.

But the judge instructed the jury that the custom was reasonable, and, if they found that the defendants agreed as alleged, they should find according to the custom ; but if they found the

services rendered without an agreement as to compensation, then they should find the value of the services. The jury found on this count $500 ; the plaintiff claiming, according to the custom. To this ruling and refusal the defendants excepted.

The report of an auditor, which was made part of the bill of exceptions, in respect to the second count, was as follows : " On the whole evidence I do not find that the plaintiff has proved a special contract for regular brokers' commissions for procuring the lessees upon a new lease. I do find that the plaintiff was engaged by the defendants to procure such lessees, and that in pursuance of the contract he brought the parties together, and the result was a lease for twenty years, at $4000 per annum for the first ten years, and $5000 per annum for the last ten years. I find that for this service the plaintiff is entitled to reasonable compensation, which reasonable compensation I find to be $500."

*E. Avery & C. S. Lincoln*, for the plaintiff.

*R. D. Smith*, for the defendants. 1. " Fitting up the premises " as used in this lease includes only the actual additions to the realty in the nature of permanent fixtures. The expression " fitting up " in common use when speaking of a shop, house or office, conveys an idea quite different from " furnishing." It is so used by the plaintiff's counsel in the bill of exceptions, and in his prayer for instructions. If the plaintiff had asked the judge to rule that " fitting up " meant putting in " fittings," no ordinary mind would suppose that furniture was included ; and when he says that fittings means " furniture," the question naturally arises why, if that was the meaning to be conveyed, did not the parties use the more common word ?   The idea conveyed by the expression " fitting up a house " is the doing of something which precedes the " furnishing " thereof. It implies the adding of something which would pass to a subsequent purchaser. The word " fittings " implies a fitness, an adaptation of a thing fitted to a particular place or thing to which it is fitted, (*fingo.*)   It implies a thing made for a place, (*fait, facere, fact*, 2 Diversions of Purley 27.)   The word " fitter " also occurs in several compounds. A gas-fitter is one who puts in gas pipes, and adapts gas pipes and fixtures, so called, to a building ; he is not a furnisher of gas. To fit a coat has quite a different meaning from furnishing a coat. " Furnish " has come to be a synonym of " supply."   The firs*

meaning of *fingo* is to mould. In all the derivatives of fit the idea of moulding, adaptation by cutting or placing or trying on is present. We submit, then, that fittings means true fixtures put into a place, adapted to them or to which they are adapted. " The carpenter stretcheth out his rule, he marketh it out with a line ; he fitteth it with planes." Isaiah xliv. 13.

It will doubtless be asked why the parties did not use the word " fixtures," if that would express the idea. The cause is obvious, fixtures has ceased to denote that positive fixation or annexation which its root (*figo*) denotes, and means now quite as often something which can be taken out without disturbing that to which it is annexed, as something which being affixed remains a part of the realty. *Hallen* v. *Runder*, 1 Cr., M. & R. 266. *Gibson* v. *Hammersmith Railway*, 11 W. R. 299. *Sheen* v. *Rickie*, 5 M. & W. 175. It is used in both senses in the two opinions in *Guthrie* v. *Jones*, 108 Mass. 191, 193, 195. In *D'Eyncourt* v. *Gregory*, L. R. 3 Eq. 382, Lord Romilly, to convey his meaning, has to speak of " fixtures inseparably attached to the freehold," and " not removable by the tenant." Whereas, in the same case, Sir Roundell Palmer and Mr. Jessel in argument use " fittings " and " fitting up " as conveying the idea of permanent fixtures, such as panels, wainscots, &c. The parties to this lease wanted a narrower word than fixture. It is doubtless true that fittings are always fixtures attached to the freehold, but it does not follow that fixtures are fittings. Fitting (*Vitten*) has that more persistent and inherent significance which clings to a Saxon root. It is more precise than fixture or fixure derived from French *fixer*. It is much more definite than the other French word furniture, which it is attempted here to include within it. Therefore as furniture, though fastened to the walls, is distinguished from fixtures ; *Guthrie* v. *Jones*, 108 Mass. 191 ; so fittings, being one class of fixtures or things fastened, and being of a narrower significance than fixtures, cannot properly include what is generally termed furniture. The furniture of a house includes curtains, (tapestry and arras,) window shades and carpets, though nailed upon walls or floors. It can scarcely be contended that " fitting up " the premises has a meaning more favorable to the plaintiff than " fitting " the premises , " up " certainly cannot signify tables and chairs. It seems rather to imply putting up partitions, doors

and floors than nailing down carpets and placing beds and wash-stands.  Besides this, the plaintiff contends for too much ; he makes fitting up include alterations, (by partitions, doors, &c.,) and also all kinds of furniture.  The word does double duty and is overworked.  He admits that it covers what we say it covers. He attempts to stretch it.  *Expressio unius est exclusio alterius.* If this word in this lease was not intended to include furniture, but was intended to include only that which the defendant con-tends, it follows that it was not intended to include furniture in its ordinary sense.  And in this description, "furniture," must, we submit, be included carpets, mirrors, window shades, and the like, fastened with nails to walls or floors for temporary con-venience ; chattels, in the case of boarding houses, in their char-acter most migratory, "usually disappearing on the verge of quarter day and generally by night."

The language of the lease is inartificial.  What was the lessee to have ?  It was compensation for loss, occasioned by abridgment of the lease, in consequence of the expenditures incurred by the lessee.  The loss, of course, was not a consequence of the expen-diture.  The meaning is loss by reason of having made an outlay which the abridgment of the lease compels him to abandon earlier than he would do if the lease expired by limitation.  This, of course, is not, as ruled, the expense of "doing anything to the premises to adapt them to his use," or "the expense of specially fitting any furniture to the premises, such as carpets, window cur-tains and the like ; that is, the labor and expense of fitting it, and the depreciation in value upon it."  All this adapting of the premises and fitting of carpets the plaintiff would have incurred anyway.  They were expenditures incurred, but no loss was "sus-tained" in "consequence of these expenditures."  By the termi-nation of the lease the lessee did not enjoy these outlays so long. It seems, then, that the measure of damage must be interest on the cost of the "fittings up," whatever that may be, during the remainder of the term.  An examination of the lease itself may throw some light upon the meaning of the parties.  The demise was to use and occupy only as a dwelling house.  If, therefore, the premises were hired for a boarding house, as stated in the bill of exceptions, this was not with the consent of the defendants, and they cannot be prejudiced thereby.  We think that "dwell

ing house" will not be found to mean "boarding house" any more than "fitting up" means "furnishing." See *Gannett* v. *Albree*, 103 Mass. 372.

Again it will be said that, the house being in perfect repair at the time of the demise, excludes the theory that "fitting up" can mean repairs. Nevertheless the lessee at once did some "repairs" which the plaintiff claims are "fitting up." The "fitting up" which is referred to in the lease, is that "which may be done during the term." If the house was in repair, "fitted up," at the beginning, it does not follow it would remain so during the whole term. Upon examination of the language of the lease, it is inconceivable when the parties stipulate concerning expenses of fitting up and expenses incurred in removing, that, in carrying their minds over the entry upon possession to what was to be done at the end of the term, they should have omitted so important a matter as the expenses incurred in furnishing, had it been their intent to include it. The "*In medio tutissimus ibis*" theory has tempted the presiding judge to walk upon a narrow isthmus; and, in balancing between the claims of the parties upon the meaning of "fitting up," he has entirely lost sight of the rule laid down by the lease for estimating damages, and allowed the jury to understand that the entire cost of additions or alterations, of fitting carpets and curtains, and the depreciation in the value thereof, was to be allowed. This is not the rule. The lessee is not to receive as damages the entire cost of "fitting up" which he has enjoyed a year or more, and of which the enjoyment is only abridged by the termination of the lease. We have nothing to do with depreciation. It is compensation for the loss sustained by abridgment of the lease that the case provides for. If depreciation of carpets and furniture were included at all, the damages are only the difference in depreciation between them at the time they are given up and one and one half years later, in proportion to the time they have been in use. It is the shortening of the period of enjoyment. Depreciation would be greater the longer they are used. The jury must have been misled by the use of this language.

The argument on the second count is omitted.

COLT, J. The clause in the lease, the interpretation of which is in dispute, was plainly intended to provide indemnity to the

lessee for loss sustained by him in case the lessors should exercise a reserved right to abridge the term by notice. This intention is not to be lost sight of. The words of the agreement are, that the lessee shall be paid such sum as a compensation for the loss he may, by such abridgment of the term, sustain " in consequence of expenditures incurred by the lessee in fitting up the premises, and expenses incurred in removing," as shall be awarded to him in the mode provided. These words as used in this lease, applied to the subject matter and the condition of the premises, cannot fairly be interpreted as including only the actual additions to the real estate in the nature of permanent fixtures. In our opinion they have a broader signification, and include not only the fitting of the building and premises to the uses of the lessee, but the fitting of his furniture to the building. This construction was adopted by the judge at the trial, and is not open to exceptions by either party.

But it was urged at the argument by the defendants that the jury were nevertheless misled by the language used by the judge in his ruling upon this point. The judge ruled that " the term ' fitting up the premises' meant all the expenses the lessee was at, during the term, in doing anything to the premises to adapt them to his use," and in fitting furniture to the same, " that is, the labor and expense of fitting it, and the depreciation in value upon it."

Without doubt the true measure of the plaintiff's damage is the loss he has sustained by reason of having incurred expenditures, the full benefit of which he has lost by the abridgment of his lease. The lessee is not to receive as damages the entire cost of a fitting up, the benefit of which he has enjoyed for a part of the term. It is the shortening of the period of enjoyment of which he complains. But we are not satisfied, upon this bill of exceptions, that the jury could have been misled by the language used as to the true rule of compensation. The ruling was not objected to at the trial as inaccurate in this respect ; it does not appear to be all the instruction given on this part of the case, and, although open to criticism, it could not have conveyed the idea, in connection with the clause in the lease, that the jury were to disregard the rule now stated as the true rule. The judge was evidently pointing out the elements which must enter into the computa-

tion in arriving at the loss sustained by the plaintiff, rather than stating the principle upon which compensation should be made, and he must have been so understood.

The second count is upon an account annexed to recover for commissions and services in negotiating a lease of the premises to another party. There was conflicting evidence on the question whether the defendants agreed to pay regular brokers' commissions. The plaintiff relied on the existence of a custom which entitled a broker to charge the lessor on a lease of twenty or over three years, one per cent. on the whole rent stipulated to be paid, while the commissions on sales of real estate were only one per cent. on the price paid.

The court ruled, against the defendants' objection, that this was a reasonable custom. But it is not necessary now to pass upon the question, because the amount of the verdict shows that the jury must have negatived the existence of an agreement to pay commissions, and founded their verdict on the value of the plaintiff's services. This they were warranted in doing under the pleadings, under the instructions given and not excepted to, and upon the report of the auditor, which was before them as evidence.                               *Exceptions overruled.*